UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.L., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-04833-SHK <br><br> OPINION AND ORDER |

Plaintiff R.L.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

# I. BACKGROUND

Plaintiff filed an application for DIB on June 23, 2016, alleging disability beginning on November 3, 2015. Transcript ("Tr.") 198-204.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on March 27, 2018, ALJ Cynthia Floyd determined that Plaintiff was not disabled. Tr. 29-46. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on April 4, 2019. Tr. 1-7. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing

---

[2] A certified copy of the Administrative Record was filed on October 28, 2019. Electronic Case Filing Number ("ECF No.") 18. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

>     Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [DIB].  See 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB].  See id.

Id. at 1098-99.

### B.   Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2020."  Tr. 31.  The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since November 3, 2015, the alleged onset date (20 CFR 404.1571 et seq.)."  Id.  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: sacroiliac joint disorder, diabetes mellitus with diabetic polyneuropathy of the lower extremities associated with diabetes mellitus type 2, obesity[,] and mild lumbar spine degenerative disc disease (20 CFR 404.1520(c))."  Tr. 32.  At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 37.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) except he is able to lift and/or carry up to 20 lbs. occasionally and up to 10 lbs. frequently, sit about 6 hours in an 8-hour day and stand or walk about 6 hours in an 8-hour workday and needs to be allowed to alternate between sitting and standing every 30 minutes. After standing for 30 minutes, he should be allowed to sit for a minute before standing again. [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl and needs to avoid concentrated exposure to workplace hazards such as working at unprotected heights, fast moving unprotected machinery and traversing uneven or slippery terrain.

Tr. 38.

The ALJ next noted that "[a]ccording to the [VE], [Plaintiff] has [PRW] as an electrical inspector" as defined in the Dictionary of Occupational Titles ("DOT") at DOT code 625.381-026[3] and as an expeditor/aviation supply clerk at DOT code 222.387-058. Tr. 45. The ALJ added that Plaintiff "was born on January 4, 1955[,] and was 60 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 404.1563)." Id. The ALJ then noted that Plaintiff "has at least a high school education and is able to communicate in English (20 CFR 404.1564)." Id.

The ALJ then found, at step four, that "[Plaintiff] is capable of performing [PRW] as an electrical inspector [as generally performed]. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1563)." Tr. 44.

---

[3] The VE noted, and the ALJ found, that Plaintiff's PRW as an electrical inspector was defined in the DOT at DOT code 625.381-026. See Tr. 45, 71. DOT code 625.381-026 appears to be a typo and probably was meant to refer to DOT code 825.381-026, which code correlates with the occupational title "Electrical Inspector (aircraft mfg.; air trans.)," which appears to match Plaintiff's PRW. See https://occupationalinfo.org/82/825381026.html (last accessed May 8, 2020). Accordingly, hereafter, the Court refers to the DOT code for Plaintiff's PRW as an electrical inspector as DOT code 825.381-026.

1    The ALJ added that "[]although [Plaintiff] is capable of performing [PRW],
2 there are other jobs existing in the national economy that he is also able to
3 perform[,]" including the occupations of "electronics assembler[,]" as it is
4 described at DOT code 726.684-018, and "electrical assembler in the aircraft
5 industry" as described at DOT code 729.384-026. Tr. 45-46. In so finding, the
6 ALJ determined that Plaintiff "has acquired work skills from [PRW] (20 CFR
7 404.1568)." Tr. 45.
8    Specifically, the ALJ noted that the VE "testified that [Plaintiff's] [PRW] as
9 an electrical inspector . . . required the following skills: attention to detail,
10 knowledge of electronic and electric assemblies and sub-assemblies, appropriate
11 knowledge of appropriate procedure and product specifications within that
12 industry and the use of small hand tools." Id.
13    The ALJ found that:
14    Based on the testimony of the [VE], . . . [Plaintiff] has acquired work
15    skills from [PRW] that are transferable to other occupations with jobs
16    existing in significant numbers in the national economy. The [VE]
17    testified [Plaintiff's] previous work is so similar to the jobs recited above
18    that [Plaintiff] would need to make very little, if any, vocational
19    adjustments in terms of tools, work processes, work settings, or the
20    industry.
21 Tr. 46.
22    The ALJ found that "although [Plaintiff's] additional limitations do not
23 allow [him] to perform the full range of light work, considering [Plaintiff's] age,
24 education and transferable work skills, a finding of 'not disabled' is appropriate
25 under the framework of Medical-Vocational Rule 202.07 section 202.00(f) of the
26 Medical-Vocational Guidelines, and 20 CFR 404.1568(d)." Tr. 46. The ALJ
27 concluded that "[Plaintiff] has not been under a disability, as defined in the . . . Act,
28

from November 3, 2015, through [March 27, 2018], the date of th[e] decision (20 CFR 404.1520(f))." Id.

### C. Issue Presented And Parties' Arguments

In this appeal, Plaintiff raises one issue, "[w]hether the ALJ's determination at [s]teps 4 and 5 are supported by substantial evidence." ECF No. 23, Joint Stip. at 4.

### D. ALJ's Step Four Finding Fails

Plaintiff argues that "[t]he ALJ's determination at Step 4 is not supported by substantial evidence" because the VE opined that a hypothetical person with Plaintiff's RFC could not perform his PRW. Id. at 5. Specifically, Plaintiff notes that the ALJ found that Plaintiff "must 'be allowed to alternate between sitting and standing every 30 minutes. After standing for 30 minutes, he should be allowed to sit for a minute before standing again.'" Id. (quoting Tr. 38). Plaintiff adds that in the fifth hypothetical question posed to the VE, the ALJ asked, in pertinent part, "'this person must be allowed the option of alternating between sitting and standing every 30 minutes. So if the person has been standing for 30 minutes, they should be allowed to sit briefly for a minute before standing again. Any past work?'" to which the VE responded, "'no, your honor.'" Id. (quoting Tr. 74) (capitalization normalized). Plaintiff argues that because the VE opined someone with Plaintiff's limitations could not perform Plaintiff's PRW, he "established that he is unable to perform his past work" at step four, and thus the ALJ's contrary finding is not supported by substantial evidence. Id.

Defendant "concedes that the [VE] testified . . . that [Plaintiff] could not perform his [PRW] with the [ALJ's] assessed [RFC]." Id. at 12 (citing Tr. 74).

Here, Defendant concedes, and the record supports a conclusion, that Plaintiff could not perform his PRW. See Tr. 74 (VE opining that someone with Plaintiff's RFC could not perform Plaintiff's PRW). As such, the Court finds that the ALJ's step four finding is not supported by substantial evidence.

8

### E.   ALJ's Step Five Finding Fails

#### 1.   Plaintiff's Arguments

Plaintiff argues that the ALJ erred at step five by citing transferable skills Plaintiff obtained at his PRW, such as "attention to detail[,]" that "are not really skills" and are instead "worker traits." ECF No. 23, Joint Stip. at 5-6. Plaintiff argues that "[t]he problem is that [he] worked on large airplanes inspecting and obtaining parts for them, not assembling the plane and parts thereof. Yet, the jobs that the [VE] identified involve the assembly of small electrical parts" and "[t]his is a conflict that the ALJ has not resolved warranting remand." Id. at 7.

Plaintiff adds that, for example, "a[] familiarity with inspecting circuitry does not translate to the ability to assemble circuitry as a primary function of the job." Id. at 11-12. Moreover, Plaintiff argues that the VE testified that very little vocational adjustment was needed because Plaintiff's PRW as an inspector involved soldering, and the assembler occupations the VE found Plaintiff could perform also involved soldering. Id. at 11. Plaintiff argues, however, that "[t]he [VE's] testimony that soldering is what binds these occupations making it little to no vocational transition is without evidentiary substance" because his PRW required inspection of soldering, whereas the proposed assembler occupations that the VE and ALJ opined Plaintiff could perform at step five require "using soldering" to assemble parts. Id. (citing DOT 726.684-018 and DOT 729.384-026). Plaintiff, therefore, argues that "[w]hile the occupations arguably share the same industry, they are radically different in the services performed." Id.

Plaintiff argues that "[t]he ALJ's error is prejudicial because transferability [of job skills] is material to [his] claim for disability" because he "[wa]s an individual closely approaching retirement age at the time of the onset" and "[a]bsent transferable skills, [he] would be entitled to a finding of disability as of his 55th birthday." Id. at 12 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.06).

/ / /

9

### 2. Defendant's Response

Defendant responds that "there is no dispute over the fact that Plaintiff was 60 years old on the alleged onset date and has at least a high school education." Id. at 13 (citing Tr. 45). Defendant asserts that "[t]he sole issue in contention is whether the ALJ properly found that Plaintiff acquired transferable skills from his [PRW]." Id. To that end, Defendant argues that "the ALJ's step five finding that Plaintiff acquired work skills from his [PRW] that are transferable to other occupations with jobs existing in significant numbers in the national economy is supported by substantial evidence." Id. at 12-13 (citations omitted).

Defendant asserts that "[a]t the administrative hearing, Plaintiff testified that he worked at Raytheon from 2000 to 2015 as an expediter and an inspector" and that "[a]s an expediter, Plaintiff testified that he picked up and delivered calibration equipment for repair" and "[a]s an inspector, Plaintiff testified that he inspected 'PC boards, calibration equipment . . . [and] wire within the board.'" Id. at 14 (citing Tr. 58). Defendant adds that Plaintiff also testified that he took "five to seven tests per year to be certified for soldering and blueprint reading." Id. (citing Tr. 58).

### 3. Plaintiff's Testimony Regarding His PRW And Transferable Skills

Plaintiff testified that he worked as an "Inspector" until 2011, when he "got downgraded because of budget cuts" to the position of "Expediter." Tr. 58. Plaintiff testified that as an inspector, he "was [an] inspector [of] PC boards, calibration equipment . . . inspecting wire, wire within the boards. [He] had to take tests, maybe five, seven tests per year . . . like [his] certification for solder [and] [c]ertification for blueprint reading." Id. Plaintiff testified that his duties as an expediter "were to pick up and deliver calibration equipment for repair." Id.

/ / /

/ / /

10

####            4.	VE's Testimony Regarding Plaintiff's Transferable Skills

The VE testified that Plaintiff "would have transfer[able] skills [from his PRW] that would allow electronics assembly work or electrical assembly work." Tr. 74.  Specifically, the VE found that Plaintiff's transferable "skill set would include attention to detail, knowledge of electronic and electrical assemblies and sub-assemblies, appropriate knowledge of appropriate procedure and product specifications within that industry.  The <u>use of hand tools, small hand tools</u>" that "would transfer with little, if any vocational adjustment[.]"  Tr. 76 (emphasis added).  The VE added that Plaintiff "had knowledge of soldering, that would be one issue in terms of skills."  <u>Id.</u>

####            5.	Relevant DOT Job Descriptions

The DOT describes the job duties of Plaintiff's PRW as an electrical inspector at DOT code 825.381-026 as:

> Inspects and tests electrical parts, assemblies, and accessories prior to installation in aircraft for conformance to specifications and quality standards, using precision measuring instruments and test equipment: Examines parts and assemblies, such as wire harnesses, control panels, coaxial cables, and electrical jig boards, for completeness of assembly, quality, and conformance to blueprints, production illustrations, engineering drawings, and specifications.  <u>Inspects</u> wiring of assemblies for accuracy of stripping, <u>soldering</u>, and crimping, and for defects, such as frayed wires, loose connections, and cracks.  Verifies wire and cable length, dimensions, and clearance of parts, using precision instruments. Tests continuity and performance of parts, assemblies, and accessories, using test equipment.  Records acceptance or rejection of parts on inspection report, and indicates reason for rejection.

<u>See</u> https://occupationalinfo.org/82/825381026.html (last accessed May 8, 2020) (emphasis added).

The DOT describes the job duties of electronics assembler at DOT code 726.684-018, which the ALJ found Plaintiff could perform the duties of at step five, as:

> Performs any combination of following tasks to assemble electronic components, subassemblies, products, or systems: Reads work orders, follows production drawings and sample assemblies, or receives verbal instructions regarding duties to be performed.  Positions and aligns parts in specified relationship to each other in jig, fixture, or other holding device.  Crimps, stakes, screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place, using hand[]tools, power tools, machines, and equipment.  Mounts assembled components, such as transformers, resistors, transistors, capacitors, integrated circuits, and sockets, on chassis panel.  <u>Connects component</u> lead wires to printed circuit or routes and connects wires between individual component leads and other components, connectors, terminals, and contact points, <u>using soldering</u>, welding, thermocompression, or related bonding procedures and equipment.  Installs finished assemblies or subassemblies in cases and cabinets.  Assembles and attaches hardware, such as caps, clamps, knobs, and switches, to assemblies.  Performs intermediate assembly tasks, such as potting, encapsulating, sanding, cleaning, epoxy bonding, curing, stamping, etching, impregnating, and color coding parts and assemblies.  Tends machines that press, shape, or wind component parts.  Adjusts or trims materials from components to achieve specified electrical or dimensional characteristics.  Performs on-line go-not-go testing and inspection, using magnifying devices, measuring instruments, and electronic test equipment, to ensure parts and

> assemblies meet production specifications and standards. May perform assembly operations under microscope or other magnifying device.

See https://occupationalinfo.org/72/726684018.html (last accessed May 8, 2020) (emphasis added).

Finally, the DOT describes the job duties of electrical assembler in the aircraft industry at DOT code 729.384-026, which the ALJ found Plaintiff could perform the duties of at step five, as:

> assembler, wire group; bench assembler, electrical [r]outes, wires, assembles, and installs electrical and electronic components in aircraft and missile units, such as main junction and terminal boxes, main control switch panels, and instrument and radio panels, according to specifications, using jig boards, hand[]tools, and equipment: Reads work orders, blueprints, and specifications to determine established assembly methods. Cuts wire to specified lengths, using wire cutters. Cuts plastic sleeves and slips sleeves over wire ends to insulate connections. Crimps terminal eyelets and lugs to wire ends, using hand or machine crimping device. Routes, combs, twists, wraps, ties, and attaches wire to terminal points, according to jig board layout, <u>using soldering gun and hand[]tools</u>. <u>Connects wiring to accessories</u>, such as relays, circuit breakers, plugs, condensers, switches, and solenoids, and installs accessory assemblies in electrical or electronic units, <u>using soldering gun and hand[]tools</u>. Conducts functional and continuity tests of electrical assemblies, components, wire harness, and plugs, using ohmmeter, test lights, and other electrical testing instruments. Pots or encapsulates electrical and electronic details. . . . May attach eyelets, terminals, and mounting studs to etched circuit boards.

See https://occupationalinfo.org/72/729384026.html (last accessed May 8, 2020) (emphasis added).

13

1    **F.    Standard To Review ALJ's Step Five Finding**

2    The regulations addressing a person with Plaintiff's characteristics provide,
3    in pertinent part, that:

4    > If you are of advanced age (age 55 or older), and you have a severe
5    > impairment(s) that limits you to sedentary or light work, we will find
6    > that you cannot make an adjustment to other work unless you have skills
7    > that you can transfer to other skilled or semiskilled work . . . that you
8    > can do despite your impairments(s).  We will decide if you have
9    > transferable skills as follows. . . .  If you are closely approaching
10   > retirement age (age 60 or older) and you have a severe impairment(s)
11   > that limits you to no more than light work, we will find that you have
12   > skills that are transferable to skilled or semiskilled light work only if the
13   > light work is so similar to your previous work that <u>you would need to</u>
14   > <u>make very little, if any, vocational adjustment</u> in terms of tools, work
15   > processes, work settings, or the industry.

16   20 C.F.R. § 404.1568(d)(4) (emphasis added); <u>see</u> <u>also</u> <u>McKenna v. Colvin</u>, No.
17   CV 13–06224 RZ, 2014 WL 5305725, at *1 (C.D. Cal. Oct. 15, 2014).

18   **G.    ALJ's Decision Is Not Supported By Substantial Evidence**

19   Here, as Defendant correctly asserts, "[t]he sole issue in contention is
20   whether the ALJ properly found that Plaintiff acquired transferable skills from his
21   [PRW]" because Plaintiff was closely approaching retirement age and had severe
22   impairments limiting him to no more than light work at the time he applied for
23   DIB.  ECF No. 23, Joint Stip. at 12; 20 C.F.R. § 404.1568(d)(4); Tr. 32, 38, 45,
24   198-204.  The Court finds that the ALJ's conclusion that Plaintiff had transferrable
25   skills from his PRW is not supported by substantial evidence because the record
26   does not support a conclusion that Plaintiff acquired the skills to "use . . . hand
27   tools, small hand tools" as the VE opined and the ALJ found.  Tr. 45-46, 76.
28   / / /

In concluding that Plaintiff had transferable skills, including the use of hand tools, the ALJ observed that the VE "testified that [Plaintiff's] [PRW] as an electrical inspector . . . required the . . . use of small hand tools." Tr. 45. Neither the DOT description of Plaintiff's PRW as an inspector, or Plaintiff's testimony supports this conclusion.

As discussed above, DOT code 825.381-026—which the Court assumes the VE and ALJ were referring to when they both listed Plaintiff's PRW as an electrical inspector as DOT code 625.381-026, see Tr. 45, 71; supra at 6 n.3—indicates that workers in this occupation inspect the wiring, crimping, and soldering work of others, rather than actually performing the wiring, crimping, and soldering work themselves. See DOT 825.381-026. Thus, the DOT description of Plaintiff's PRW does not support a conclusion that Plaintiff worked with small hand tools and, thus, has the skillset to use them now with very little, if any, vocational adjustment. 20 C.F.R. § 404.1568(d)(4).

Plaintiff's testimony also does not support a conclusion that Plaintiff could use hand tools with very little, if any, vocational adjustment. Plaintiff testified that his PRW included inspecting and gathering parts for airplane production and, while working as an inspector up to 2011, taking certification tests "for solder" and "blueprint reading." Tr. 58. It is unclear on the record before the Court whether Plaintiff's certification tests "for solder" were to certify that Plaintiff could solder things himself, or if the tests merely certified that Plaintiff could inspect the soldering work of others. Although Defendant argues that Plaintiff's tests were "to be certified for soldering[,]" ECF No. 23, Joint Stip. at 14, based on the DOT description of Plaintiff's PRW that workers in this field "[i]nspect[] wiring of assemblies for accuracy of stripping, soldering, and crimping, and for defects[,]" it seems unlikely that Plaintiff's certification tests "for solder" tested Plaintiff's ability to perform soldering work, rather than to merely inspect the soldering work of others. DOT 825.381-026.

Nevertheless, even assuming Plaintiff's certification tests "for solder"—the last of which Plaintiff appears to have taken in 2011 before he was downgraded to an expediter and some seven years before the ALJ's unfavorable decision in 2018—certified that Plaintiff could solder things rather than merely inspect soldered things, it is unclear how Plaintiff's ability to solder things translated to Plaintiff's ability to use more "hand tools, small hand tools" beyond just a soldering gun with "very little, if any, vocational adjustment." 20 C.F.R. § 404.1568(d)(4); Tr. 45-46, 58, 76.

This unexplained discrepancy is critical here because the two occupations the ALJ opined Plaintiff could perform at step five indicate that Plaintiff would need to use a variety of tools beyond just a soldering gun to perform those occupations. See DOT 729.384-026 (requiring the use of "jig boards, hand tools, and equipment" to "installs electrical and electronic components in aircraft and missile units, such as main junction and terminal boxes, main control switch panels, and instrument and radio panels); see also DOT 726.684-018 (listing duties as "[c]rimps, stakes, screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place, using hand tools, power tools, machines, and equipment"; "connects wires . . . using soldering, welding, thermocompression, or related bonding procedures and equipment"; "Tends machines that press, shape, or wind component parts"; uses "magnifying devices, measuring instruments, and electronic test equipment.").

Accordingly, the ALJ's conclusion that Plaintiff had transferrable skills from his PRW is not supported by substantial evidence. As such, the Court finds that the ALJ failed to meet her burden at step five of proving that there are jobs that exist in significant number in the national economy that Plaintiff can perform.

Because the ALJ's findings at steps four and five are not supported by substantial evidence, the Court finds that remand for further proceedings is necessary.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 05/11/2020

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge